IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BIRGETTA CLAY and CANDICE MCINTYRE, individually and on behalf of all others similarly situated, <br><br>        *Plaintiff*s, <br><br>     v. <br><br> KLARNA INC., <br><br>        *Defendant*. | Case No. 1:26-cv-03506 |

**DEFENDANT KLARNA INC.'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

## INTRODUCTION & BACKGROUND

Klarna Inc. ("Klarna") is a financial-technology company that provides its customers with an alternative to traditional credit-card transactions through its buy-now-pay-later ("BNPL") products. These products include (1) its "Pay Later" products, such as "Pay in 4," which allow consumers to split their purchase into four interest-free payments made over several weeks; and (2) its "Fair Financing" products that are offered in partnership with WebBank, which is the lender of this product, and permit customers to repay over a longer period and may include interest. (Compl. ¶ 22 (Dkt. 1); Fricke Decl. ¶ 3.)[1] Plaintiffs Birgetta Clay and Candice McIntyre are both longtime Klarna customers who began using the platform in or around 2020 (Compl. ¶¶ 114, 122) and have made 112 and 98 purchases, respectively, using Klarna's products (Fricke Decl. ¶¶ 6, 7).

Plaintiffs now bring a putative class action against Klarna for alleged violations of the Electronic Funds Transfer Act ("EFTA"), Truth in Lending Act ("TILA"), and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). Plaintiffs allege that Klarna failed to perform a meaningful assessment of Plaintiffs' ability to repay (Compl. ¶¶ 29–39) and used a mandatory autopay system that Plaintiffs allege resulted in their having overdrafted their accounts, resulting in various fees assessed by third parties (*id.* ¶¶ 40–45). Plaintiffs' claims suffer from numerous deficiencies, but this Court need not reach the merits. The only question before the Court is whether Plaintiffs are bound to arbitrate their disputes, and the answer is unequivocally yes.

Plaintiff Clay first used Klarna's "Pay in 4" offering in October 2020, to make a $58.45 purchase on Sephora's website. (Fricke Decl. ¶ 6.) Plaintiff McIntyre first used Klarna's "Pay

---

[1] All declaration and exhibit citations herein are citations to the declaration and exhibits of Danielle Fricke, filed concurrently herewith.

1

in 4" offering to make a $44.00 purchase from clothing retailer boohoo in January 2020.  (*Id.* ¶ 7.)  Each of the more-than 200 times that Plaintiffs have collectively used Klarna, they have expressly assented to Klarna's terms of service, which include a binding arbitration provision. The Second Circuit enforced a substantially similar version of Klarna's arbitration provision on similar facts.  *See Edmundson v. Klarna, Inc.*, 85 F.4th 695, 705–07 (2d Cir. 2023).

Each time Plaintiffs used Klarna and selected Klarna's Pay in 4 option, they were shown the "Confirm and pay" interface that displayed a schedule of four interest-free payments.  (Fricke Decl. ¶ 10; Ex. 3.)  Under the schedule and "Due today" amount were the words: "By continuing, I agree to the Truth in Lending Disclosure, the Pay in 4 terms and the Payment Authorization terms and authorize Klarna and partner banks to do a soft credit check to assess eligibility, marketing and other uses as stated in the terms. No impact to credit score."  (*Id.*) Each underlined phrase was a hyperlink the user could click to access the linked terms.  (*Id.*)  To continue making their purchases, Plaintiffs selected the button marked "Pay with Klarna."  (*Id.*)

When Plaintiffs selected one of Klarna's other financing options, they were shown a "Confirm and pay" interface that displayed a schedule of payments and identified the total interest due.  (Fricke Decl. ¶ 11; Ex. 4.)  Under the schedule and "Due today" amount were the words: "By continuing, I agree to the Truth in Lending Disclosure and the Loan Agreement and have received the Credit Score Disclosure. Financing issued by WebBank, Privacy policy."  (*Id.*) Each underlined phrase was a hyperlink that the user could click to access the linked terms and disclosures.  To continue making their purchases, Plaintiffs then checked a box next to the terms and selected the "Confirm payment with Klarna" button.  (*Id.*)  Clay executed loan agreements on November 4, 2025, February 3, 2026, and February 4, 2026, and McIntyre executed loan agreements on August 7, 2025, September 19, 2025, February 23, 2026, March 7, 2026, March

26, 2026, April 4, 2026, April 5, 2026, and April 9, 2026.  (Fricke Decl. ¶¶ 12, 13; Exs. 5, 6.)

| **Pay in 4** | **Other Financing Options** |
|:---:|:---:|




Every time Plaintiffs have gone through this process, the Klarna terms of service have included a mandatory arbitration provision.[2] (*See* Fricke Decl. ¶ 4; Exs. 7, 9, 10, 12.) The versions in effect when Plaintiffs made their first respective purchases with Klarna both contain a broad arbitration provision and notify Plaintiffs that as Klarna changes its terms, Plaintiffs accept the new terms before continuing to use Klarna's services. (Exs. 10, 12 ("We constantly work to improve our Services . . . . This may require changes to these terms. In this case, you will be asked to accept the new terms before you can continue to use the Services."); *see also id.* ("Future changes to this arbitration provision" explaining that changes to the arbitration provision would not apply to claims filed prior to the change).) Further, the terms in effect when Plaintiffs filed their complaint include the following provision:

> **Prior Arbitration Provision.** If there is an Arbitration Provision in place (a "Prior Arbitration Provision") governing a prior agreement between you and Klarna (a "Prior Agreement") and you do not reject this Arbitration Provision, claims subject to the Prior Arbitration Provision will be governed by this Arbitration Provision instead, unless you served notice of your claims on Klarna or initiated a lawsuit or arbitration against Klarna asserting your claims prior to the effective date of publication above.

(Ex. 9 at 29.) Given these provisions and Plaintiffs' repeated use of Klarna's payment options for purchases as recent as April 28, 2026 for Clay and May 14, 2026 for McIntyre (Fricke Decl. ¶¶ 6, 7), the version of the service terms in effect when Plaintiffs filed their complaint therefore governs. (Ex. 9.)

The service terms include a mandatory arbitration provision requiring that disputes relating to Plaintiffs' use of Klarna's products and services, including Pay Later and Fair Financing, be resolved through binding arbitration. (*See* Decl. ¶ 4; Ex. 9.) The existence of this

---

[2] The Truth in Lending Disclosure and Loan Agreements to which Plaintiffs agreed when selecting other financing options offered through Klarna also included a mandatory arbitration provision substantially similar to the provision in Klarna's terms of service. (Exs. 5, 6.)

mandatory arbitration provision is prominently disclosed at the beginning of the service terms in bold, capitalized font. (Ex. 9 at 1; *see also* Exs. 5, 6 (disclosure at beginning of loan agreements).)

v8.4.2  Published on **November 13, 2025**                               ⬇ Download as PDF

# User Terms for Klarna Shopping Service

These user terms and conditions (hereinafter referred to as the "Agreement") govern the contractual relationship between Klarna Inc., including its subsidiaries, affiliates, agents, and assigns, ("Klarna", "we", "us" or "our") and you ("you" and "your") when you use service and features through the Klarna website or mobile application (the "Services"). The Services include but are not limited to your account with us ("Klarna User Account"), the Klarna website, our mobile application (or any other app that we may create in the future) ("Klarna App"), the Klarna Extension, any and all associated technologies used by or with the Services and any other services provided by Klarna or other third parties where this Agreement is presented to you. This Agreement contains important terms that govern your relationship with us and your use of the Services, including (but not limited to):

- **Mandatory Arbitration of Disputes**

- **Electronic Communication Agreement**

- **Permission to Obtain Credit Reports**

- **Rewards Points Terms of Use**

Some Services, such as our payment, credit, or loyalty program products and credit products issued by financial institution partners, may require you to agree to additional terms and conditions. To the extent there is a conflict between this Agreement and any additional terms and conditions, the terms and conditions will control unless such additional terms expressly state otherwise.

You can at any time access the latest version of this Agreement via the Klarna App or at **https://www.klarna.com/us/legal/**.

**ARBITRATION NOTICE: EXCEPT AS DESCRIBED IN THE "MANDATORY ARBITRATION OF DISPUTES" SECTION BELOW, YOU AGREE THAT DISPUTES BETWEEN YOU AND US WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION AT THE ELECTION OF EITHER PARTY, AND YOU WAIVE YOUR RIGHT TO A JURY TRIAL AND YOUR RIGHT TO BRING OR RESOLVE ANY DISPUTE AS OR TO PARTICIPATE IN A CLASS, CONSOLIDATED, PRIVATE ATTORNEY GENERAL, REPRESENTATIVE, OR COLLECTIVE ACTION IN COURT OR IN ARBITRATION, UNLESS YOU OPT-OUT AS DESCRIBED IN THE SAME SECTION BELOW.**

(Ex. 9.)

The Mandatory Arbitration of Disputes provision, also linked at the beginning of the service terms, sets forth the applicable terms as follows:

[Y]ou agree that any and all past, present or future disputes or claims, including without limitation (a) federal and state regulatory and statutory claims, (b) common law claims, (c) claims under local ordinances, (d) data breach or privacy claims and (e) claims based in contract, tort, intentional tort, fraud, misrepresentation or any other legal theory, arising out of or relating to the Terms for Klarna Shopping Service ("Agreement"), the Klarna Pay Later in 4 Agreement, the Klarna Pay Later By Card Terms, the Klarna Pay By Card Agreement or other agreements between you and Klarna (collectively, the "Klarna Agreements"), Services provided by Klarna, use of the Klarna App or Klarna Extension, or Klarna.com, purchases or payments you make, transactions you engage in, collection of amounts due, or the relationship between you and Klarna or our financial institution partners and their agents, employees, officers, directors, predecessors in interest, and successors and assigns (collectively, "Dispute(s)") – at the election of you or us – shall be resolved exclusively through final and binding arbitration, as set forth in this Arbitration Provision, rather than in court before a judge or a jury.

(Ex. 9 at 22–23; *see also* Exs. 5, 6 ¶ 19.1.)

The provision also afforded Plaintiffs the choice to opt out of arbitration and provided clear instructions on how to do so. (Ex. 9 at 28–29; *see also* Exs. 5, 6 ¶ 19.10.)

The arbitration provision also contains, in capitalized letters, the following prohibition on class and mass actions and non-individualized relief:

YOU AGREE THAT EACH PARTY MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION OR PROCEEDING. UNLESS BOTH YOU AND THE OTHER PARTY AGREE OTHERWISE IN WRITING, AND EXCEPT AS PROVIDED IN SECTION 8.f., THIS ARBITRATION PROVISION WILL PRECLUDE YOU FROM BRINGING ANY CLASS, COLLECTIVE, COORDINATED, CONSOLIDATED, MASS AND/OR REPRESENTATIVE ACTION AGAINST KLARNA, AND WILL ALSO PRECLUDE YOU FROM PARTICIPATING IN OR RECOVERING RELIEF IN ANY CURRENT OR FUTURE CLASS, COLLECTIVE, COORDINATED, CONSOLIDATED, MASS AND/OR REPRESENTATIVE ACTION BROUGHT AGAINST KLARNA BY SOMEONE ELSE. EXCEPT AS SET FORTH IN SECTION 8.f., THE ARBITRATOR MAY NOT CONSOLIDATE OR JOIN MORE THAN ONE PERSON'S OR PARTY'S CLAIMS AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A CONSOLIDATED, REPRESENTATIVE, OR CLASS PROCEEDING. EXCEPT AS SET FORTH IN SECTION 8.f., THE ARBITRATOR MAY AWARD RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) AVAILABLE IN AN INDIVIDUAL LAWSUIT ONLY EXCEPT AS SET FORTH IN SECTION 8.f. BELOW.

(Ex. 9 at 24; *see also* Exs. 5, 6 ¶ 19.5.)

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA"), this Court should compel Plaintiffs to submit their claims to arbitration and stay this action pending the outcome of that arbitration.

## ARGUMENT

## I.      PLAINTIFFS ARE OBLIGATED TO ARBITRATE THEIR CLAIMS.

The FAA mandates that arbitration agreements "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This statute embodies a "liberal federal policy favoring arbitration" and reflects the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Accordingly, "courts must place arbitration agreements on an equal footing with other contracts, . . . and enforce them according to their terms." *Id.* (internal citation omitted).

In deciding a motion to compel arbitration, a court's inquiry is limited to whether there is a valid arbitration agreement and whether that agreement covers the particular dispute at issue. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010); *see also Kass v. PayPal Inc.*, 75 F.4th 693, 700 (7th Cir. 2023) ("To compel arbitration, a party must show (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration."). The court may consider evidence beyond the pleadings when deciding a motion to compel arbitration. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809–10 (7th Cir. 2011). When both requirements are satisfied, the court must enforce the arbitration agreement; the FAA "leaves no place for the exercise of discretion by a district court." *See, e.g.*, *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S.

-7-

213, 218 (1985).

**A. The Parties Entered Into Valid And Enforceable Arbitration Agreements.**

Federal courts apply state-law principles of contract formation to determine "whether a valid agreement to arbitrate exists between" the parties. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710–11 (7th Cir. 2019). To form a contract under Illinois law, there need only be "a manifestation of mutual assent on the part of two or more persons." *Id.* at 711 (quoting *Zabinsky v. Gelber Grp., Inc.*, 807 N.E.2d 666, 671 (Ill. 2004)); *see also id.* at 712 ("In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract." (quoting *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006))).[3] Illinois courts apply an objective standard under which the parties need not share the same subjective understanding of the contract terms, so long as there is mutual assent. *Rose v. Mercedes-Benz USA, LLC*, 167 F.4th 975, 978 (7th Cir. 2026).

"Illinois contract law requires that a website provide a user reasonable notice that his use of the site or click on a button constitutes assent to an agreement." *Hamera v. Best Buy Co., Inc.*, 790 F. Supp. 3d 664, 667 (N.D. Ill. 2025) (quoting *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1036 (7th Cir. 2016)). Courts assess whether a user had reasonable notice from the perspective of a reasonable online shopper who is "neither an expert nor a novice with technology" and is assumed to have "familiarity with commercial websites, hyperlinks, and online contracts." *Id.* at

---

[3] Although Klarna's service terms contain a choice-of-law provision agreeing that Ohio law will govern (*see* Ex. 9 at 22, 26), the "question of contract formation is antecedent to the enforcement of specific terms of the contract, including a choice-of-law provision," *Anand v. Heath*, 2019 WL 2716213, at *2 n.1 (N.D. Ill. June 28, 2019). Illinois law therefore applies until the Court decides whether the parties entered a valid agreement to arbitrate. If the Court concludes they did, the contract's choice-of-law provision then controls any remaining analysis of the arbitration agreement's scope and enforceability. That said, a valid agreement to arbitrate exists here regardless of which state law applies. *See, e.g.*, *N. Side Bank & Tr. Co. v. Trinity Aviation, LLC*, 153 N.E.3d 889, 894 (Oh. Ct. App. 2020) ("Express contracts exist when there is offer, acceptance, and mutual assent.").

671 (quoting *Domer v. Menard, Inc.*, 116 F.4th 686, 695 (7th Cir. 2024)). Courts also consider the following factors to examine reasonable notice: (1) simplicity of the screen; (2) clarity of the disclosure; (3) size and coloring of the disclosure's font; (4) spatial placement of the hyperlink; and (5) temporal relationship to the user's action. *Id.*

When Plaintiffs made a purchase using Klarna's Pay in 4 service, they were required to agree to the "Pay in 4 terms."[4] (*See* Ex. 3.) The screen presenting the notice of Klarna's terms was streamlined and uncluttered, with nearly all the text being pertinent to the checkout process and organized into a few sections in a single column. *See Domer*, 116 F.4th at 696. The language of the disclosure itself, which informed the users that "[b]y continuing" they were agreeing to the terms, reasonably prompted users to read the terms. *See Hamera*, 790 F. Supp. 3d at 675. The text presenting the terms also gave users reasonably conspicuous notice of the terms by distinguishing the hyperlinks with underlining and using a black font while the rest of the disclosure appeared in gray. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) ("Although the sentence is in a small font, the dark print contrasts with the bright white background, and the hyperlinks are in blue and underlined."). The notice of the terms was also spatially and temporally coupled with the mechanism for manifesting assent—the "Pay with Klarna" button. The statement linking to the terms appeared directly above the button, ensuring that a user would review it before submitting the order, and on the same page where the order would be placed, ensuring a temporal connection. *See Hamera*, 790 F. Supp. 3d at 675–76 (finding spatial placement factor "weighs strongly in favor of conspicuousness" where the notice and hyperlink is immediately above the "Place Your Order" button); *Domer*, 116 F.4th at 699 (finding temporal relationship weighs in favor of reasonably conspicuous notice where

---

[4] The Klarna Pay Later in 4 Agreement incorporates the Klarna service terms and explicitly states that the services include an arbitration provision. (Exs. 8, 11, 13.)

disclosure is on the same page where the order will be placed).[5]

(Ex. 3.)  Pointing to these same elements present in a different Klarna product, the Second

Circuit held that a consumer had assented to arbitrate claims against Klarna and reversed the

district court's denial of a motion to compel arbitration.  *Edmundson*, 85 F.4th at 705–07 (finding

---

[5] The "Confirm and pay" screen when Plaintiffs selected one of Klarna's other term loan financing options also gave notice of the Truth in Lending Disclosure and the Loan Agreement in a streamlined and uncluttered manner.  The language of the notice informed users that "[b]y continuing" they were agreeing to the terms.  The text presenting the terms also distinguished the hyperlinks with underlining and by using a black font while the rest of the disclosure appeared in gray.  The notice of the terms was also next to a check box used for manifesting agreement and on the same page as the "Confirm payment with Klarna" button used to finalize the purchase.  (Ex. 4.)

that Klarna's checkout "widget" provided reasonably conspicuous notice of Klarna's terms, including the mandatory arbitration provision, and that plaintiff "unambiguously manifested assent" by selecting "Confirm and continue" to finalize her purchase using Klarna's "Pay in 4" service). Here, too, Plaintiffs had reasonably conspicuous notice of the terms and the mandatory arbitration provision.

A consumer unambiguously assents when she has reasonable notice of such terms and clicks to submit an order. *See Domer*, 116 F.4th at 699–700. Here, Plaintiffs manifested assent to the terms by continuing with their purchase and clicking "Pay with Klarna" because the disclosure, which was directly above the "Pay with Klarna" button, stated that "By continuing," the users were agreeing to the terms.[6] (Ex. 3.) *See Lopez v. Ring, LLC*, 2022 WL 22970787, at *11 (C.D. Ill. Oct. 31, 2022) (plaintiffs assented to terms "where the app or website displayed the phrase 'By continuing you agree to Ring's terms of Service' and by clicking the 'Done' or 'Create Account' button"); *Hu v. Whaleco, Inc.*, 779 F. Supp. 3d 265, 295 (E.D.N.Y. 2024) (plaintiffs unambiguously manifested assent to terms by continuing with registration of accounts where the disclosure stated, "[b]y continuing, you agree to our Terms of Use and Privacy & Cookie Policy"). The fact that the "Pay with Klarna" button had two functions—completing a purchase and assenting to the terms—does not render Plaintiffs' assent ambiguous. *See Domer*, 116 F.4th at 700; *see also Edmundson*, 85 F.4th at 705–07 (finding that Klarna's checkout "widget" provided reasonably conspicuous notice of Klarna's terms, including the mandatory arbitration provision, and that plaintiff "unambiguously manifested assent" by selecting

---

[6] Plaintiffs also manifested assent to the Truth in Lending Disclosure and the Loan Agreement for Klarna's term loan financing products by clicking the box next to the notice linking to the terms. *See Domer*, 116 F.4th at 695 (noting that courts recognize enforceable contracts where the website provides reasonably conspicuous notice of the terms and "the consumer takes some action, such as clicking a button or ***checking a box***, that unambiguously manifests his or her assent to those terms" (emphasis added)).

"Confirm and continue" to finalize her purchase using Klarna's "Pay in 4" service).

Furthermore, the "30-day Opt-out Right" section of the service terms expressly provides that customers may choose to pursue their claims in court and opt out of the arbitration provision "by fully completing, signing and dating the arbitration opt-out notice form . . .and mailing it to Klarna via first-class mail" within 30 days of first using the Klarna service or otherwise accepting the agreement. (Ex. 9 at 28; *see also* Exs. 5, 6 ¶ 19.10.) The provision states, "If you do not opt out within 30 days, . . . this arbitration provision will be part of all other agreements you have with Klarna now or in the future." (Ex. 9 at 29; *see also* Exs. 5, 6 ¶ 19.10.) Neither Plaintiff opted out of arbitration as the exclusive means of resolving any disputes. (Fricke Decl. ¶¶ 19, 21.) Their failure to do so, despite clear instructions and ample opportunity, establishes their acceptance of the arbitration agreement, as courts have routinely held. *See, e.g.*, *Gupta*, 934 F.3d at 714 (finding mutual assent to mandatory arbitration where defendant "reasonably construed [plaintiff's] silence as acceptance of the arbitration agreement after he was given a clear offer, a reasonable opportunity to opt-out, and repeated instructions that silence and continued employment reflected acceptance"); *Boomer v. AT & T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002) (finding silence constituted acceptance of service terms, including arbitration agreement, where plaintiff had reasonable opportunity to reject the terms but nonetheless continued to use defendant's services); *Page v. Alliant Credit Union*, 2020 WL 2526488, at *2 (N.D. Ill. May 18, 2020) ("[T]he conspicuous and unambiguous opt-out provision of the agreement . . . coupled with plaintiff's silence . . . constitute[s] assent to the arbitration provision."). Disputes between Plaintiffs and Klarna are thus subject to the arbitration provisions of Klarna's service terms.

**B.     The Arbitration Agreement Encompasses Plaintiffs' Claims.**

Given that Plaintiffs agreed to arbitrate their claims with Klarna, the question becomes

whether the arbitration agreement encompasses the claims Plaintiffs bring in this lawsuit. *See Granite Rock Co.*, 561 U.S. at 297; *see also Kass*, 75 F.4th at 700. Plaintiffs' claims fall squarely within the arbitration agreement in Klarna's service terms. Plaintiffs agreed to arbitrate "any and all past, present or future disputes or claims . . . arising out of or relating to the Terms for Klarna Shopping Service ('Agreement'), the Klarna Pay Later in 4 Agreement, . . . Services provided by Klarna, use of the Klarna App or Klarna Extension, or Klarna.com, . . . or the relationship between [the user] and Klarna or [its] financial institution partners and their agents, employees, officers, directors, predecessors in interest, and successors and assigns . . . ." [7] (Ex. 9 at 22–23.) The Seventh Circuit routinely construes the phrases "arising out of" or "relating to" "quite broadly to include all manner of claims tangentially related to the agreement." *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002); *see also Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993) ("'[A]rising *out of*' reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se."). Plaintiffs' disputes fall squarely within this scope. The claims relate to Klarna's service terms because those terms, including the arbitration provision, are incorporated into the Klarna Pay in 4 Agreement. (Exs. 8, 11, 13.) Plaintiffs' disputes also arise out of the "relationship between [Plaintiffs] and Klarna" (Ex. 9 at 22) because Clay allegedly incurred overdraft and late fees, and McIntyre allegedly incurred late fees and related financial harm, all as a direct consequence of their relationship with Klarna and its payment and credit-extension practices. (Compl. ¶ 181.)

---

[7] The Truth in Lending Disclosure and the Loan Agreement also provided that Plaintiffs agreed to arbitrate "any and all past, present, or future disputes or claims, . . ., arising out of or relating to this Agreement, your loan, purchases or payments you make, transactions you engage in, collection or amounts due, or the corresponding relationship between you, on the one hand, and WebBank and/or Klarna Inc., and their agents, employees, officers, directors, predecessors in interest, and successors and assigns . . ., on the other hand . . . ." (Exs. 5, 6 ¶ 19.1.)

The arbitration agreement also expressly applies "without limitation" to "federal and state regulatory and statutory claims" (Ex. 9 at 22)—precisely the type of claims Plaintiffs assert here. Courts in this district routinely compel arbitration of TILA, EFTA, and ICFA claims. *See, e.g.*, *Powell v. Payday Loan Store of Ill., Inc.*, 2010 WL 3893894, at *1, 6 (N.D. Ill. Sept. 28, 2010) (granting motion to compel arbitration of TILA and ICFA claims); *Stockman v. Massage Envy Franchising, LLC*, 2024 WL 1376060, at *1, 4 (N.D. Ill. Mar. 30, 2024) (granting motion to compel arbitration of EFTA claim). To the extent any doubt remains concerning the scope of arbitrable issues—and none should—it "should be resolved in favor of arbitration" because the "'arising out of or relating to' language" "necessarily create[s] a presumption of arbitrability." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1034 (7th Cir. 2012) (internal marks and citation omitted).

## C. Plaintiffs Agreed to Arbitrate Their Claims on an Individual Basis.

Under the service terms, Plaintiffs agreed not only to arbitrate the claims at issue in the Complaint, but also to "BRING CLAIMS AGAINST [KLARNA] ONLY ON AN INDIVIDUAL BASIS AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION OR PROCEEDING." (Ex. 9 at 24; *see also* Exs. 5, 6 ¶ 19.5.) Class-action waivers of this kind are fully enforceable. "In the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018); *see also AT&T Mobility LLC*, 563 U.S. at 352 (FAA preempts state-law decision holding that class waivers in arbitration agreements are unconscionable). Plaintiffs' agreements with Klarna expressly provide that they will be governed by the FAA. (Ex. 9 at 23; *see also* Exs. 5, 6 ¶ 19.3.) Accordingly, Plaintiffs must arbitrate their claims on an individual basis, not through class-wide proceedings.

**II.      ALL PROCEEDINGS SHOULD BE STAYED PENDING ARBITRATION.**

Once this Court compels arbitration, the FAA requires that the Court, on application of one of the parties, "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) (quoting 9 U.S.C. § 3). The Court has no discretion to deny a stay in these circumstances. *Id.*; *see, e.g.*, *Ceron Bran v. Zubha Pop Foods, LLC*, 817 F. Supp. 3d 664, 672 (N.D. Ill. 2025) (granting motion to compel arbitration and staying case pending arbitration). Accordingly, upon granting Klarna's motion to compel arbitration, the Court should stay all proceedings in this action pending arbitration.

CONCLUSION

For the foregoing reasons, Klarna respectfully requests that this Court grant its motion to compel arbitration and stay all proceedings in this action pending the completion of arbitration.

Dated: June 3, 2026                           Respectfully submitted,


By: */s/ Danielle N. Morris*
_____

Elizabeth L. McKeen (CA Bar No. 216690)
Danielle N. Morris (CA Bar No. 246295)
O'MELVENY & MYERS LLP
610 Newport Center Drive
17th Floor
Newport Beach, California 92660-6429
Telephone:  +1 949 823 6900
Facsimile:   +1 949 823 6994
emckeen@omm.com
dmorris@omm.com

*Attorneys for Defendant Klarna Inc.*

-16-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 3, 2026, a copy of the foregoing document was electronically filed with the Clerk of Court through the CM/ECF system, which will send notification of such filing to all counsel of record at the email addresses on file with the Court.

By:   <u>*/s/ Danielle N. Morris*</u>
               Danielle N. Morris