**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **BIRGETTA CLAY and CANDICE MCINTYRE,** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**KLARNA INC.**,<br><br>Defendant. | Case No. 1:26-CV-03506 |

**PLAINTIFFS' RESPONSE TO KLARNA'S**
**MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

**STEPHAN ZOURAS, LLC**
James B. Zouras
Ryan F. Stephan
Justin M. Caparco
STEPHAN ZOURAS, LLC
222 West Adams Street, Suite 2020
Chicago, Illinois 60606
Telephone: (312) 233-1550
jzouras@stephanzouras.com
rstephan@stephanzouras.com
jcaparco@stephanzouras.com

## I. INTRODUCTION

Even by the FAA's forgiving standards, what Klarna asks is extraordinary. It would send Plaintiffs to a forum where individual arbitration costs more than the claims are worth, leaving them little choice but to coordinate. But coordination triggers the mass arbitration rules, where Plaintiffs lose control of their claims entirely. Their arbitrations would be automatically stayed, they may not take discovery, and they may not file a brief without Klarna's permission. Then a single arbitrator resolves every issue Klarna raises—no briefing, no discovery—and may dismiss every demand outright. Whatever survives proceeds to an "MDL Tribunal," which disposes of "all common issues of fact or law" the same way. Its rulings are "binding" and "dispositive." Plaintiffs have no say in which issues count as "common," no hope of adequate representation, and no opportunity to defend their claims. Worse still, their claims might have already been decided before they ever set foot in the forum. No court has ever endorsed these rules. The forum that wrote them, FedArb, is a novice in consumer arbitration. After years in obscurity, FedArb "saw an opportunity" when mass arbitration began frustrating companies at established forums. These rules are its pitch.

The terms are unconscionable, and the Court cannot compel arbitration before a forum so openly one-sided—especially given how difficult it is to vacate an arbitral award once entered. Severance cannot save the agreement. Making it fair would require the Court to impose obligations the parties never agreed to; something severance cannot do. The agreement also fails because Plaintiffs did not knowingly or voluntarily waive their constitutional right to an Article III judge. The Constitution accepts nothing less.

## II. BACKGROUND

### A. Klarna's arbitration agreement is imposed on financially vulnerable consumers.

Desperate for short-term credit, Plaintiffs turned to Klarna's Buy-Now, Pay-Later ("BNPL") products. Klarna drafted the terms with the help of sophisticated counsel and presented

them to Plaintiffs on a take-it-or-leave-it basis. There was no opportunity to negotiate. Not that Plaintiffs would have known what to negotiate for—they did not know what arbitration was until they began exploring their legal options.[1]

**B. FedArb's rules favor Klarna at every step.**

Klarna chose FedArb as its arbitral forum. ECF No. 15-8, at 26. FedArb's procedures contemplate two paths: individual arbitration or mass arbitration. Individual arbitration is out of the question. The filing fee alone is $2,000, split between the parties[2]—which happens to match the maximum amount Plaintiffs could recover in statutory damages. *See* 15 U.S.C. § 1693m. From there, Plaintiffs must split the arbitrator's hourly rate with Klarna. Plaintiffs' claims are not that valuable, so this path is closed to them.

So mass arbitration it is.[3] Or not. Plaintiffs do not have the right to invoke FedArb's mass arbitration procedures; only Klarna does. Under FedArb's rules, a mass arbitration commences only if Klarna "register[s] with FedArb" the relevant agreement, "execute[s] an agreement with FedArb," and "pay[s] the annual subscription for mass arbitration administration[.]" Exhibit A, *FedArb's Mass Arbitration Framework*, Rule 1(a). For claims like these, where the cost of arbitrating individually exceeds the potential recovery, Klarna might never start one. But assume it does. A mass arbitration can occur when "20 or more individual claims" are filed "with the assistance or coordination of the same law firms[.]" Ex. A. What makes claims similar enough, the

[1] Even had Plaintiffs read and understood the terms, they had nowhere else to go: every major BNPL provider requires arbitration. Ex. E, ¶ 6-7; Ex. F, ¶ 6-7.

[2] *Arbitration Fees for Individual Arbitrations*, FedArb, https://fedarb.com/fedarb-rules/arbitration-fees-for-individual-arbitrations/ (last visited June 11, 2026).

[3] Despite the mass arbitration label, FedArb and Klarna insist that the mass arbitration is comprised of "individual demands[.]" ECF No. 15-10, at 29; *see also* ECF No. 15-10, at 25 ("YOU AGREE THAT EACH PARTY MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS"); Ex. A, Rule 1(c)(iv) (staying all "individual arbitrations"); Ex. A, Rule 1(f)-(g) (allowing claimants to pursue "individual arbitrations").

rules do not say; FedArb decides that for itself. Plaintiffs have no right to contest whether their claims belong in a mass arbitration, in whole or in part. Nor do the rules define "coordination" between law firms or say how far back FedArb may look (*i.e.*, weeks, months, or years) to deem separate filings coordinated. FedArb decides that too. So if demands arrive from different firms at different times, FedArb may unilaterally declare the lawyers coordinated and funnel their clients into one proceeding. Plaintiffs get no chance to show otherwise.

Once Plaintiffs find themselves in a mass arbitration, their individual arbitrations are "automatically stayed[.]" Ex. A, Rule 1(b)(iv). Then, before any filing fees are paid, Klarna may file a "Pre-Filing Fee Motion." *Id.* Rule 1(c). In theory, Plaintiffs may file one too, subject to a modest caveat: they must pay $30,000 for the privilege.[4] Realistically, then, only Klarna will file one. The motion goes "promptly before a single former federal judge selected by FedArb[.]" *Id.* Rule 1(c)(iii). Plaintiffs are merely "consult[ed]" about FedArb's selection, nothing more. They cannot challenge that arbitrator's appointment, by discovery or motion to strike. *Id*. That arbitrator is then empowered to dismiss "all of the claimants for failure to state a claim."[5] How one motion could properly dispose of 20 plus claimants in one stroke is unexplained. Does Klarna define the "common issues" itself and move to dismiss on that definition? Does it pick a demand it deems representative and build a 12(b)(6) motion around that? The rules do not say.

What the rules do make clear is that Plaintiffs need not be heard on the motion at all. Their cases stay frozen while the arbitrator "promptly" resolves it. They have no right to brief it. Briefing is governed by FedArb's Expedited Arbitration Rules (*id.* Rule 1(g)(i)), which allows briefing

---

[4] And because each demand remains an individual arbitration under both Klarna's agreement and FedArb's rules, every claimant would have to pay that $30,000 to file one.

[5] *FedArb Updates Its Mass Arbitration Rules*, FEDARB (Nov. 13, 2023), https://fedarb.com/fedarb-updates-its-mass-arbitration-rules/.

"only if [the parties] agree such briefs are necessary ***and*** with the tribunal's approval[.]" Exhibit B, *FedArb's Expedited Arbitration Rules* (emphasis added). Why Klarna would agree to let Plaintiffs brief a motion that aims to end their case is not explained. And even if it did, FedArb would still have to sign off on 20 plus briefs after already deciding—with no input from Plaintiffs—that the demands are similar enough to be bundled together. That means Plaintiffs cannot contest what "common" issues are actually common, and cannot reach the merits even if they are.

In the unlikely event Plaintiffs survive the Pre-Filing Fee Motion, they must confront an MDL Tribunal. The Tribunal's members are "selected from FedArb's panel[.]" Ex. A, Rule 1(e). Once again, Plaintiffs have no right to challenge the Tribunal's appointment. *Id*. It was not always that way. FedArb's previous framework provided that the MDL Tribunal would be selected "with input from the parties identified above." Exhibit C, *FedArb's 2021 Framework for Mass Arbitration Proceedings*, at 3. That provision has inconspicuously disappeared. Ex. A, Rule 1(e). That's troubling enough on its own, but more so here because Klarna has a secret "[w]ritten agreement" with FedArb concerning this mass arbitration—an agreement it will not share.[6] *Id.* Rule 1(a). Does that agreement pre-select the pool of acceptable arbitrators? Limit who can serve? Give Klarna some other role in the process? Plaintiffs and the Court do not know, and Klarna will not say. Nor could Plaintiffs find out in arbitration because they have no right to discovery.

The MDL Tribunal then decides—while Plaintiffs' cases remain stayed—every issue: "(i) any dispositive motions the parties elect to bring (including counterclaims); (ii) all discovery disputes; (iii) all common issues of fact or law; (iv) any common damages issues; and (v) any other motion either side deems relevant." *Id.* Rule 1(e). How the Tribunal decides what counts as a

[6] Plaintiffs requested Klarna's written agreement with FedArb during the parties' meet and confer, and again by email. *See* Exhibit D, *June 5, 2026 Email Chain*. Klarna refused to produce it.

"common" issue is, again, unexplained. Whatever the answer, Plaintiffs have no right to be heard on anything. But not to worry. Once the MDL Tribunal issues its decisions, claimants are free to resume their individual cases—subject to another caveat: the Tribunal's rulings are "binding… and dispositive" on them. *Id.* Rule 1(g)(ii). And should the Tribunal prove generous enough to leave an issue unresolved, claimants get no automatic right to discovery or briefing on what is left, per the Expedited Arbitration Rules. *Id.* Rule 1(g)(i).

Dismissal is not the only risk. Plaintiffs also face an "Affirmation Requirement," where they must submit a sworn declaration that the contents of their demand are "true and correct." Ex. A, Rule 1(b)(ii). Fail to meet that heightened pleading standard and FedArb "may impose an appropriate sanction" on Plaintiffs or their counsel, including dismissal and monetary penalties. Ex. A, Rule 1(c)(v). Yet Plaintiffs are not entitled to discovery to support their allegations. Discovery is governed by FedArb's Expedited Arbitration Rules, which prohibit depositions and permit only document discovery approved by the MDL Tribunal—the same Tribunal in which Plaintiffs have no right to participate. Ex. A, Rule 1(g)(i); Ex. B, at 2–3; Ex. A, Rule 1(e). Plaintiffs must file their demands under threat of sanction while being denied the discovery needed to substantiate them.

**C. FedArb is new to consumer arbitration and eager to please its corporate clients.**

A careful reader might wonder why an arbitral forum would draft rules this one-sided. The answer is driven by inexperience and audience. FedArb is new to consumer arbitration. It says it has handled "hundreds of high profile complex civil cases" over two decades.[7] That may sound impressive until compared to the tens of thousands of arbitrations AAA and JAMS administer each

[7] FedArb, *FedArb Updates Its Mass Arbitration Rules for 2025* (Jan. 22, 2025), https://fedarb.com/fedarb-updates-its-mass-arbitration-rules-for-2025/.

year.[8] FedArb's record is so thin that Plaintiffs found only one case compelling arbitration to it: *Petersen-Dean, Inc. v. SolarWorld Americas, Inc.*, 2018 WL 1151731, at *7 (N.D. Cal. 2018). That case predates the mass arbitration rules Klarna now asks this Court to enforce by years.

And FedArb has been unusually candid about who it writes its rules for. When mass arbitration began imposing significant upfront costs on corporate defendants, FedArb saw "an opportunity" to court companies looking for a cheaper way out.[9] Its president and CEO, Ken Hagen, said FedArb's procedures were "designed to minimize the front-end costs for companies[.]"[10] How the rules affected consumers was not worth mentioning. FedArb has not hidden its bias since. In January 2025, it announced revisions supposedly meant to "eliminate procedural or substantive unconscionability issues."[11] That is a telling thing to set out to fix. The trouble with rules that deny claimants a hearing is that they deny claimants a hearing; not that they invite unconscionability arguments. Not to FedArb, apparently. And in May 2025, FedArb floated more "reforms," including requiring plaintiffs' firms to "front filing costs," while deferring defendants' fees until after a preliminary motion to dismiss is resolved.[12] In other words, FedArb's solution remains making it more difficult for consumers to vindicate their rights.

---

[8] Am. Arb. Ass'n, *What 2025 Data Reveals About Mass Arbitration* (2025), available at: https://www.adr.org/news-and-insights/what-2025-data-reveals-about-mass-arbitration/; JAMS, *JAMS Reports Rising Global Demand for ADR in 2025 Resolution Report* (2026), available at: https://www.jamsadr.com/news/2026/jams-reports-rising-global-demand-for-adr-in-2025-resolution-report.

[9] FedArb, *Another Arbitration Service, FedArb, Establishes New Mass Arbitration Protocol* (February 7, 2020), https://fedarb.com/another-arbitration-service-fedarb-establishes-new-mass-arbitration-protocol/.

[10] FedArb, *FedArb Establishes a Mass Employment Arbitration Framework* (January 27, 2020), https://fedarb.com/fedarb-establishes-a-mass-employment-arbitration-framework/.

[11] FedArb, *FedArb Updates Its Mass Arbitration Rules for 2025* (Jan. 22, 2025), https://fedarb.com/fedarb-updates-its-mass-arbitration-rules-for-2025/.

[12] FedArb, Inc., *Rethinking Mass Arbitration: Building on MDL's Proven Blueprint* (May 20, 2025), https://fedarb.com/rethinking-mass-arbitration-building-on-mdls-proven-blueprint/.

**D. The Parties meet and confer about the arbitration agreement.**

Pursuant to the Court's order, the Parties met and conferred about Klarna's motion. Plaintiffs explained that the arbitration agreement was unconscionable, beginning with the cost of individual arbitration. Klarna never offered to cover those costs—perhaps wary that such an agreement could lead to a costly mass arbitration. But Klarna did ask whether Plaintiffs' counsel had been retained by other clients. Plaintiffs' counsel confirmed that they had. Plaintiffs then explained that, given the modest recovery at stake, they would have little choice but to coordinate with other claimants if compelled to arbitrate, thereby triggering FedArb's mass arbitration framework. Plaintiffs asked Klarna about the framework and invited its response. Klarna refused to engage, insisting the procedures were irrelevant because they had not yet been triggered. Plaintiffs explained that, if compelled to arbitrate, they intended to coordinate with other claimants, which is what triggers the framework. Klarna still refused to address it.

After the meet and confer, Plaintiffs renewed their request for Klarna's mass arbitration agreement with FedArb. Ex. A, Rule 1(a). Although Klarna does not dispute that Plaintiffs are bound by FedArb's mass arbitration rules, it refused to produce the agreement on the grounds that it "does not apply to [Plaintiffs'] agreement to individually arbitrate their claims against Klarna outside the context of a mass arbitration[.]" *See* Exhibit D, *June 5, 2026 Email Chain*.

## III. ARGUMENT

The arbitration clause is unconscionable, and severance cannot save it without adding obligations the parties never assumed. Plaintiffs address that below. But first, a point that eluded Klarna during the meet and confer: unconscionability is measured at the time of contract formation.

**A. The Court must consider FedArb's mass arbitration framework.**

The mass arbitration framework is squarely before the Court, regardless of whether Klarna thinks it will get invoked. Unconscionability is measured "at the time of making [the] contract[.]"

*Caley v. Glenmoor Country Club, Inc.*, 2013-Ohio-4877, ¶ 45. Terms are analyzed "as drafted," without regard to how they might play out. *Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 677 (6th Cir. 2003) (considering the "chilling effect" of a cost-splitting provision). Every court to confront a mass arbitration framework has taken it into account.[13] Klarna cannot disclaim the terms it drafted on the ground that no one has invoked them yet. And for all Plaintiffs know, they have already been invoked (the proceedings are confidential). Plaintiffs could be funneled into a mass arbitration already underway, where the MDL Tribunal has adjudicated "all common issues" against them, leaving nothing to arbitrate. They could not do a thing about it: they have no say in whether they are swept into a mass arbitration, and no power to challenge the Tribunal's "binding" adverse rulings once they are. The Court must consider the framework as drafted.

**B. The arbitration agreement is unconscionable.**

Under Ohio law, Klarna's arbitration agreement is both procedurally and substantively unconscionable. *Jeffrey Mining Prod., L.P. v. Left Fork Mining Co.*, 758 N.E.2d 1173, 1180 (2001).

**1. Klarna's arbitration agreement is procedurally unconscionable.**

Procedural unconscionability turns on the parties' relative bargaining positions, including "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply." *Collins v. Click Camera & Video, Inc.*, 86 Ohio App. 3d 826, 833 (1993). Those factors, individually and collectively, point squarely toward procedural unconscionability here. Plaintiffs are financially

[13] *See, e.g., Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at *5 (N.D. Cal. 2024), aff'd, 2025 WL 2463742 (9th Cir. 2025); *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1040 (N.D. Cal. 2022); *Parker v. Verizon Commc'ns Inc.*, 2025 WL 1547291, at *5 (N.D. Ill. 2025); *Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1128 (S.D. Cal. 2024); *Carolus v. Coinbase Glob., Inc.*, 2025 WL 3033736, at *11 (N.D. Cal. 2025); *Brooks v. WarnerMedia Direct, LLC*, 2024 WL 3330305, at *17 (S.D.N.Y. 2024); *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 298 (S.D.N.Y. 2025).

strained consumers desperate for short-term credit. Klarna is a sophisticated company that drafted the terms and imposed them on a take-it-or-leave-it basis. Plaintiffs did not know there was an arbitration clause; they did not even know what an arbitration agreement was when they clicked "I Agree." Exhibit E, *Clay Decl.*, ¶¶ 3-4; Exhibit F, *McIntyre Decl.*, ¶¶ 3-4.

Nor does Klarna's opt-out provision cure the problem. *See Walker v. Nautilus, Inc.*, 541 F. Supp. 3d 836, 843 (S.D. Ohio 2021). By Klarna's own count, Plaintiffs accepted its terms more than 200 times, meaning they would have had to mail more than 200 separate first-class letters to preserve their rights. ECF No. 15, at 2. The right to opt-out is illusory.

**2. The arbitration agreement is substantively unconscionable.**

Substantive unconscionability asks whether the terms themselves are fair and reasonable. *See Collins*, 621 N.E.2d at 1299. Picking which terms to complain about is the hard part.

***i. The individual arbitration filing fees are prohibitive.***

A clause is substantively unconscionable where arbitration costs "effectively deny a claimant the right to a hearing[.]" *Felix v. Ganley Chevrolet, Inc.*, 2006-Ohio-4500, ¶ 21. Klarna requires Plaintiffs to pay a $1,000 filing fee to initiate an individual arbitration—matching their maximum statutory recovery. *See* 15 U.S.C. § 1693m. Then they must split the arbitrator's hourly rate. Plaintiffs cannot afford a forum that expensive. *See* Ex. E, ¶ 5; Ex. F, ¶ 5. Nor would any claimant pursue arbitration when the fees exceed the potential recovery. *Carnegie v. Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).[14] The defect reaches the delegation clause: getting in the door costs everything the case is worth, contesting arbitrability costs more still.

---

[14] Klarna has yet to offer to cover the costs of individual arbitration—perhaps wary that doing so could invite a costly mass arbitration. Not that it would matter; unconscionability is measured at the time of contracting. *Morrison*, 317 F.3d at 661 (considering the "chilling effect" of a cost-splitting term).

***ii. Plaintiffs cannot challenge arbitrability in mass arbitration.***

If individual arbitration is prohibitively expensive, mass arbitration manages to be worse. Challenging arbitrability there requires a Pre-Filing Fee Motion. Ex. A, Rule 1(c)(ii). That motion costs $30,000 to file.[15] Ex. A, Rule 1(c)(iv). No one is going to spend 30 times their maximum recovery to question the arbitrator's jurisdiction. *See also* Ex. E, ¶ 5; Ex. F, ¶ 5.

***iii. Plaintiffs have no say in who decides their claims in mass arbitration.***

Because Plaintiffs have no say in who decides their cases, the entire arbitral process is "infected" with unconscionability. *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 687 (9th Cir. 2024); *see also McMullen v. Meijer, Inc.*, 355 F.3d 485, 493–94 (6th Cir. 2004). Klarna's Pre-Filing Fee Motion is "resolved promptly" by an arbitrator "selected by FedArb[.]" Ex. A, Rule 1(c)(iii). Plaintiffs are entitled to "consultation" and nothing more. The same goes for the MDL Tribunal, except Plaintiffs are not entitled even to consultation. Ex. A, Rule 1(e). There is also the secret "[w]ritten agreement" between FedArb and Klarna. Ex. A, Rule 1(a). Klarna refuses to produce. Ex. D. Does it pre-select the list of acceptable arbitrators from which the panel is formed? Plaintiffs and the Court can only guess. This defect reaches the delegation clause: the arbitrator rules on his own jurisdiction, and Plaintiffs have no right to explore whether he is biased or pre-selected. Ex. A, Rule 1(a), (c)(ii)-(iii).

***iv. Plaintiffs are denied briefing and discovery while under threat of sanction.***

FedArb does not offer Plaintiffs an opportunity to "present [their] evidence and arguments." *Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123, 1130 (7th Cir. 1997). Briefing

---

[15] And because the demands in a mass arbitration stay individual arbitration under both Klarna's agreement and FedArb's rules, each claimant must pay $30,000 to challenge arbitrability on their own. *See* ECF No. 15-10, at 29 (mass arbitration is comprised of "individual demands[.]"; *see also* ECF No. 15-10, at 25 ("YOU AGREE THAT EACH PARTY MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS"); Ex. A, Rule 1(f)-(g) (allowing claimants to pursue "individual arbitrations").

occurs only if both Klarna (the party Plaintiffs are suing) and FedArb approve.[16] Ex. B. Discovery is no better. In a mass arbitration, Plaintiffs' individual proceedings are automatically stayed while the MDL Tribunal resolves "all discovery disputes"—common or not—without hearing from Plaintiffs. Ex. A, Rules 1(b)(iv), 1(e), 1(g)(ii). Whatever discovery survives is governed by the Expedited Arbitration Rules, which bar depositions and permit only document discovery already approved by the Tribunal. Ex. B. Plaintiffs need discovery from Klarna to prove, for example, that Klarna offered repayment only through automatic withdrawals, but Plaintiffs have no automatic right to obtain the needed discovery. At the same time, Plaintiffs are under threat of sanction if they fail to substantiate their claims. Ex. A, Rules 1(b)(ii), 1(c)(v). All of this reaches the delegation clause. Plaintiffs are not entitled to brief arbitrability without Klarna's and FedArb's approval. Nor are they entitled to discovery to challenge the arbitrator's fitness to rule on his own jurisdiction. And even putting that aside, Plaintiffs face the risk of sanctions for failing to substantiate claims they have no means to investigate. That threat chills arbitration claims from the start.

***v. Plaintiffs are bound without due process.***

Set all of that aside and a deeper problem remains: FedArb's framework purports to bind nonparties, contrary to the "deep-rooted historic tradition that everyone should have his own day in court." *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996). Due process applies in arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 349 (2011) ("at least this amount of process would presumably be required for absent parties to be bound by the results of arbitration.").

FedArb's MDL Tribunal can bind absent parties without ever hearing from them. Once Klarna initiates a mass arbitration, FedArb unilaterally decides which claimants belong in it. Plaintiffs cannot contest whether they belong at all. Once they are in, their claims are stayed: no

---

[16] FedArb's individual arbitration rules fare no better, guaranteeing no right to briefing or discovery. Exhibit G, *FedArb's Individual Arbitration Rules*, Rule 10.05, 10.07.

briefing, no discovery. The Tribunal then decides "all common issues of fact or law" without asking Plaintiffs which issues are common, or how those issues should come out. Its rulings bind them all the same. Our law grants no such power over a nonparty who has never been heard. *See Cannon v. Armstrong Containers Inc.*, 92 F.4th 688, 708–12 (7th Cir. 2024); s*ee also Taylor v. Sturgell*, 553 U.S. 880, 901 (2008) (rejecting that "virtual representation" could bind nonparties).

It gets worse. A mass arbitration could already be underway. Plaintiffs would not know; FedArb proceedings are confidential.[17] And because FedArb alone decides who belongs in a mass arbitration, Plaintiffs could be folded into that proceeding after the fact—whether it is pending or already over. It would not matter that Plaintiffs' counsel had nothing to do with the earlier filings; FedArb could simply decide, without evidence or hearing from Plaintiffs, that Plaintiffs' counsel was "coordinating" with the law firm that triggered the mass arbitration. By then, the Tribunal may have already disposed of every "common issue." In other words, Plaintiffs could enter the forum with nothing to arbitrate, their claims decided against them before they arrived. No notice, no assurance of adequate representation, no right to be heard. Due process does not tolerate that. *See Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 812 (1985). The problem might sound familiar: the Ninth Circuit recently rejected mass-arbitration procedures much like FedArb's. *Heckman*, 120 F.4th at 685.[18]

All of this reaches the delegation clause: a ruling on arbitrability—whether through the Pre-Filing Fee Motion or the MDL Tribunal—could bind Plaintiffs without their participation. It

---

[17] Prior arbitrations are not confidential to Klarna, of course. If Klarna does not like how the MDL Tribunal has ruled, it can amend its terms and route the next round to a new forum. Plaintiffs, by contrast, litigate in the dark. The result is that Klarna secures "many of the protections and advantages of a class action" while leaving Plaintiffs "virtually none of its protections and advantages." *Heckman*, 120 F.4th at 685.

[18] And at least the arbitral forum in *Heckman* explained how bellwether rulings would bind nonparties and left later arbitrators some discretion to apply them. FedArb does neither.

could even come from a mass arbitration that is already underway, or already over, decided before Plaintiffs arrive.

FedArb likes to compare its mass arbitration framework to consolidation under the federal multidistrict litigation statute, but that doesn't survive a cursory comparison.[19] *See* 28 U.S.C. § 1407. Section 1407 lets a panel of seven Article III judges consolidate individual cases for pretrial proceedings, after a public hearing on whether transfer is fair; the court appoints lead counsel, every plaintiff may be heard, and unsettled cases return home for trial. *Id.*; *see also Heckman*, 120 F.4th at 684. Consolidation of this sort is perfectly acceptable in arbitration, provided claimants receive "sufficient notice, opportunity to be heard, and adequate representation by the lead parties." *See, e.g., Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1184 (9th Cir. 2025) ("The consolidation here implicates none of those [due process] concerns: no claimant is at the mercy of another claimant's representation of her."); *see also Cannon*, 92 F.4th at 712 (holding that plaintiffs could not be bound absent a "full and fair opportunity" to litigate). FedArb's framework sets out to bind nonparties without ever hearing from them. In plain terms, its procedures violate due process.

***vi. The class waiver is unconscionable.***

Finally, the class waiver Klarna seeks to impose is unconscionable given the modest recovery at stake. *See, e.g.*, *Eagle v. Fred Martin Motor Co.*, 2004-Ohio-829, ¶¶ 73–74 (declining to enforce a class waiver in an arbitration agreement); *Schwartz v. Alltel Corp.*, 2006-Ohio-3353, ¶ 26 (same). With statutory damages capped at $1,000, Plaintiffs are left with claims too small to bring alone—which is to say, no way to bring them at all. Ex. E, ¶ 5; Ex. F, ¶ 5.

Klarna will say that *Eagle* and *Schwartz* did not survive *Concepcion*. It will be half right. *Concepcion* held that the FAA preempts state rules interfering with arbitration's fundamental

[19] *See* Hagen, supra note 9.

attributes: speed, informality, low stakes, and bilateral nature. *Concepcion*, 563 U.S. at 348-52 (2011); *see also Heckman*, 120 F.4th at 689. FedArb's framework does not share those attributes (at least not without denying claimants their due process rights). Add the protections due process requires—procedural formality, adequate representation, a right to be heard, and so on—and what remains is not the type of arbitration the FAA protects. *Concepcion's* preemption holding therefore does not reach this agreement. *Eagle* and *Schwartz* apply, and the class waiver cannot be enforced.

**C. Severance is not possible.**

Severance cannot save this agreement. Courts may strike unenforceable terms; they may not create affirmative duties the parties never accepted. *See Ignazio v. Clear Channel Broad., Inc.*, 2007-Ohio-1947, ¶ 17; *see also Acuity v. Progressive Specialty Ins. Co.*, 2023-Ohio-3780, ¶ 24 ("It is not within our province to rewrite contracts to create judicially preferred outcomes."). The defects here cannot be cured by deleting a sentence or two. Protecting Plaintiffs' due process rights would require rewriting the agreement entirely. Nor can severance cure the problem with FedArb itself. It is already "odd to think that an arbitrator" should be "entrusted with ensuring that third parties' due process rights" are protected. *Concepcion*, 563 U.S. at 350. It is stranger still here, where FedArb designed rules "for companies" that bind future claimants without a semblance of due process. These are not drafting errors; they reflect FedArb's open hostility to consumer rights. Even if individual provisions could be severed, the Court should not compel Plaintiffs into a forum so "tainted" with bias. *Scovill v. WSYX/ABC*, 425 F.3d 1012, 1017 (6th Cir. 2005).

**D. Compelling arbitration would violate Plaintiffs' Article III rights.**

The Constitution affords Plaintiffs the right to have their disputes resolved by a life-tenured and salary-protected Article III judge. U.S. Const. art. III, § 1; *see also Stern v. Marshall*, 131 S. Ct. 2594, 2609 (2011). That right may be waived only through "knowing and voluntary consent." *See, e.g.*, *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 684 (2015). That is a far cry from

ordinary contract formation, where the law binds anyone "who agrees to terms in writing" regardless of whether they understood them. *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992). A contract surrendering a constitutional right "is no normal contract" and demands knowing and voluntary consent. *Bayo v. Napolitano*, 593 F.3d 495, 503–05 (7th Cir. 2010).[20] Plaintiffs neither knew they were agreeing to Klarna's arbitration provision nor understood that it purported to waive their right to Article III adjudication. Ex. E, ¶¶ 2-4; Ex. F, ¶¶ 2-5. Klarna cannot show otherwise. Compelling arbitration would therefore strip Plaintiffs of a fundamental constitutional right they never knowingly or voluntarily relinquished.

Defendant will say this argument upends FAA jurisprudence. It does no such thing. Courts have long required that waivers of civil constitutional rights be knowing and voluntary. *See*, *e.g.*, *D.H. Overmyer Co. v. Frick Col.*, 405 U.S. 174, 185 (1972). The Seventh Circuit applies the same standard when parties consent to adjudication by a magistrate or bankruptcy judge. *See*, *e.g.*, *Mark I, Inc. v. Gruber*, 38 F.3d 369, 370 (7th Cir. 1994). There is no principled reason to treat arbitration differently. If anything, arbitration warrants closer scrutiny. Consent to magistrate or bankruptcy adjudication usually comes with counsel. Plaintiffs had none when they clicked "I Agree." They accepted take-it-or-leave-it terms while in financial distress, with no BNPL competitor offering credit without arbitration and no lawyer to explain the rights they were giving up. Ex. E, ¶¶ 2-7; Ex. F, ¶¶ 2-7. Finding a valid waiver here would put arbitration agreements on different constitutional footing than every other waiver our law recognizes. The Constitution does not permit such a double standard.

## IV. CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Klarna's motion.

---

[20] *See also Kass v. PayPal Inc.*, 75 F.4th 693, 705 n. 3 (7th Cir. 2023).

Dated: June 18, 2026

**STEPHAN ZOURAS, LLC**

By: /s/ *Justin M. Caparco*
Justin M. Caparco

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on June 18, 2026, I filed the attached with the Clerk of the Court using the Court's electronic filing system, which will send such filing to all attorneys of record.

*/s/ Justin M. Caparco*