IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

BIRGETTA CLAY and CANDICE MCINTYRE, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

KLARNA INC.,

*Defendant*.

Case No. 1:26-cv-03506

**DEFENDANT KLARNA INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

## INTRODUCTION

In response to Klarna's Motion to Compel Arbitration and Stay Litigation, Plaintiffs do not dispute that they agreed to Klarna's arbitration provision, that they did not opt out, that their claims fall within the arbitration agreement's scope, or that the Federal Arbitration Act ("FAA") requires a stay pending arbitration. Rather, Plaintiffs focus primarily on their disagreement with FedArb's mass arbitration framework—a set of procedural rules that have not been triggered, may never be triggered, and that govern a process distinct from the individual arbitration procedures implicated here.

Mass arbitrations are a procedural strategy class-action plaintiffs' counsel developed several years ago whereby they would recruit online as many as tens of thousands of consumers who reported to have used a certain product for which arbitration agreements were in place. Counsel would then threaten putative defendants with the simultaneous filing of thousands of individual arbitration demands. Applicable arbitration providers' rules would then require defendants to pay tens of millions of dollars in initial filing fees at the outset of the filing, regardless of the merit of the threatened claims, which often forced defendants into settlements to which they would not have otherwise agreed. In response to this trend, arbitration providers began revising their rules to enable parties to meaningfully adjudicate mass filings of nearly identical, individual arbitration demands against a single defendant by the same plaintiffs' counsel. *See generally* J. Maria Glover, *Mass Arbitration*, 74 Stan. L. Rev. 1283, 1289, 1340–41 (2022); 1 Alt. Disp. Resol. § 8:22 (4th ed. 2025).

While Plaintiffs lodge many arguments against them, FedArb's mass arbitration procedures are entirely irrelevant here because there are only two Plaintiffs, and these procedures

only apply when there are 20 or more claimants.[1] Moreover, even if these procedures did apply, they are not substantively unconscionable. (*See* Section I, below.)

As for whether their individual claims must be arbitrated, Plaintiffs have not met their burden of establishing procedural or substantive unconscionability. As for procedural unconscionability, courts have rejected arguments that an inequality of bargaining power is sufficient to avoid enforcement of arbitration agreements. Plaintiffs' argument that they were unaware of the provision they agreed to is likewise unavailing. (*See* Section II, below.) As to substantive unconscionability, Plaintiffs' class-waiver challenge fails under controlling precedent, their fee-splitting arguments ignore the express consumer protections of both Klarna's agreement and FedArb's procedural rules, and their unsupported Article III arguments conflict with decades of precedent enforcing arbitration clauses. (*See* Section III, below.)

Finally, even if Plaintiffs had established that any aspect of the arbitration agreement was unconscionable or otherwise unenforceable, the severability clause in Klarna's arbitration agreement requires that any unenforceable provision be severed while the remainder of the arbitration agreement and FedArb's procedures remain in full force. (*See* Section IV, below.)

Therefore, this Court should grant Klarna's motion to compel arbitration of Plaintiffs' individual claims because Plaintiffs have not met their burden of showing the arbitration agreement is both procedurally and substantively unconscionable. *Winkler v. Total Quality Logistics, LLC*, 2018 WL 6570677, at *2 (N.D. Ill. Dec. 13, 2018) (Leinenweber, J.) (citing *Taylor Bldg. Corp. of Am. v. Benfield*, 884 N.E.2d 12, 25 (Ohio 2008)).[2]

---

[1] While Plaintiffs speculate about the terms of Klarna's agreement with FedArb concerning mass arbitration procedures, the terms of that agreement are simply not relevant because there are only two plaintiffs in this proceeding. (Ex. D (Dkt. No. 17-4).)

[2] Klarna's terms of service include a choice-of-law provision stating that Ohio law will govern. (*See* Ex. 9 at 22, 26). Courts in this district apply the state law selected by the arbitration agreement when

## ARGUMENT

### I. FEDARB'S MASS ARBITRATION PROCEDURES ARE INAPPLICABLE AND ARE NOT UNCONSCIONABLE.

#### A. FedArb's Mass Arbitration Procedures Do Not Apply To Plaintiffs' Complaint.

Under FedArb's procedures, a "'Mass Arbitration' is deemed to exist when 20 or more individual claims by employees or consumers are submitted for arbitration by or with the assistance or coordination of the same law firms or organizations and where the claims are subject to a common set of factual and legal issues." (Ex. A (Dkt. No. 17-1); *see also* Ex. 9 at 27 (Klarna's service terms state, "[i]f 20 or more demands for arbitration are filed relating to the same or similar subject matter, and counsel for the parties submitting the demands are the same or coordinated, you and we agree that this will constitute a 'Mass Arbitration.'").)[3] In the event of a mass arbitration, FedArb's rules set forth case management processes that enable mass adjudication, but those processes do not apply to individual arbitrations that are not part of a mass arbitration. (*See* Ex. A.) These rules are therefore entirely inapplicable here, to a case with two named Plaintiffs.

#### B. FedArb's Mass Arbitration Procedures Are Not Unconscionable.

Plaintiffs raise a laundry list of complaints with FedArb's inapplicable mass arbitration procedures. Even if the Court were to consider them (which is not necessary to resolve this

---

evaluating unconscionability. *See, e.g.*, *Winkler*, 2018 WL 6570677, at *2 (applying Ohio law); *Shaw v. First Commc'ns, LLC*, 2021 WL 131433, at *10 (N.D. Ill. Jan. 14, 2021) (applying Ohio law). However, even if the Court found that the choice-of-law provision did not apply to the unconscionability determination because such a determination requires the Court to assess the agreement's legality, Illinois law would also require Plaintiffs' claims to be sent to arbitration. *See Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357 (7th Cir. 2015) ("A contract's choice-of-law provision may not apply if the contract's legality is fairly in doubt, for example, if the contract is unconscionable.").

[3] Numbered exhibits cited herein are exhibits to Klarna's Motion. Lettered exhibits cited herein are exhibits to Plaintiffs' Opposition.

dispute), they are unpersuasive.

***First***, the procedures for selecting arbitrators are not one-sided, as Plaintiffs suggest. Pre-Filing Fee motions in mass arbitrations must "be resolved promptly before a single former federal judge selected by FedArb in consultation with the ***parties' counsel***." (Ex. A ¶ 1(c)(iii) (emphasis added).) The MDL Tribunal, which decides dispositive motions, discovery disputes, common issues of fact or law, common damages issues, and any other motions, will be "selected from FedArb's panel." (Ex. A ¶ 1(e).) These procedures are not the kind of one-sided procedures that courts have deemed unconscionable. *Compare McMullen v. Meijer, Inc.*, 355 F.3d 485, 494 (6th Cir. 2004) (finding procedure "inherently lacks neutrality" where it "grants one party . . . unilateral control over the pool of potential arbitrators"); *see also Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 927 (9th Cir. 2013) (finding arbitration policy that "unilaterally assigns one party . . . the power to select the arbitrator" unconscionable).

***Second***, Plaintiffs incorrectly contend that FedArb's mass arbitration procedures do not permit briefing and discovery. But the procedures expressly state that the Tribunal will decide "(i) any dispositive motions the parties elect to bring (including counter claims); (ii) all discovery disputes; (iii) all common issues of fact or law; (iv) any common damages issues; and (v) any other motion either side deems relevant." (Ex. A ¶ 1(e).) Plaintiffs' argument rests on a misunderstanding of the applicability of FedArb's Agreement for Expedited Arbitration, which applies only in certain circumstances at the claimant's own election. (Ex. B (Dkt. No. 17-2); Ex. G Rule 16.01 (Dkt. No. 17-7).)

***Third***, Plaintiffs' claim that they "are under threat of sanction if they fail to substantiate their claims" (Resp. at 11) also mischaracterizes the mass arbitration procedures. While the procedures authorize sanctions for violating the Affirmation Requirement, that requirement

demands only "a sworn declaration averring that the information in both the Demand for Arbitration and the Spreadsheet is true and correct to the best of the representative's knowledge after an inquiry reasonable under the circumstances." (Ex. A ¶¶ 1(b)(ii), 1(c)(v).) This is no different from verified-complaint requirements applicable in courts across the country.

***Finally***, Plaintiffs' suggestion that a mass arbitration may already be underway without their knowledge and that they will be found to have secretly "coordinated" with another law firm is utterly speculative (Resp. at 12).[4]

## II. KLARNA'S ARBITRATION PROVISION IS NOT PROCEDURALLY UNCONSCIONABLE.

Putting aside Plaintiffs' wholly irrelevant arguments regarding mass arbitration procedures that are inapplicable here, their arguments regarding their individual claims fare no better. Plaintiffs offer two primary arguments regarding procedural unconscionability: that they were in a weaker bargaining position relative to Klarna and that they were unaware of the arbitration provision. Neither of these arguments has merit.

Courts have repeatedly held that unequal bargaining power alone does not render an arbitration agreement procedurally unconscionable. *See Washington v. HSBC Mortg. Servs., Inc.*, 2013 WL 3192813, at *6 (S.D. Ohio June 21, 2013) ("[A]n unequal bargaining position is not, in and of itself, a sufficient reason in law or equity to hold that arbitration agreement unenforceable." (quoting *Hawkins v. O'Brien*, 2009 WL 50616, at *4 (Ohio Ct. App. Jan. 9, 2009))) (collecting cases); *Parker v. Verizon Commc'ns Inc.*, 2025 WL 1547291, at *2 (N.D. Ill. May 30, 2025) (citing *Goesel v. Boley Int'l (H.K.) Ltd.*, 806 F.3d 414, 423 (7th Cir. 2015)) ("[A]

---

[4] Plaintiffs' argument that FedArb's mass arbitration Pre-Filing Fee motion would prohibit them from contesting the arbitrability of their claims before FedArb is an illusory concern, given that the arbitrability of their dispute is properly being decided by this Court in connection with this very motion. (*See* Resp. at 10.)

lack of bargaining power and the fact that a contract is one of adhesion cannot alone create procedural unconscionability."). The only authority Plaintiffs cite for this proposition is *Collins v. Click Camera & Video, Inc.*, which involved neither an arbitration provision nor a click-through agreement. 621 N.E.2d 1294, 1296 (Ohio Ct. App. 1993). Moreover, *Collins* found no procedural unconscionability despite plaintiff's failure to read the applicable clause, noting that inability to negotiate terms "is insufficient to establish procedural unconscionability." *Id.* at 1300.

Plaintiffs' argument that they were unaware of the arbitration clause when they agreed to Klarna's terms is similarly unpersuasive. *See Stachurski v. DirecTV, Inc.*, 642 F. Supp. 2d 758, 765 (N.D. Ohio 2009) ("Plaintiffs' failure to read the [agreement], including the arbitration clause, does not render the clause invalid."); *Payne v. Yerba Mate Co., LLC*, 2023 WL 8718118, at *4 (N.D. Ill. Dec. 18, 2023) (Rowland, J.) (plaintiff's assertion that he did not read the terms of the agreement does not render contract unenforceable or unconscionable) (collecting cases).

Even if there were facts here that suggested procedural unconscionability—which there are not—Plaintiffs' opportunity to opt out "weighs heavily against a finding of procedural unconscionability." *See Kowalok v. ARB Gaming, LLC*, 2026 WL 1113315, at *8 (N.D. Ohio Apr. 24, 2026) ("[A]n arbitration agreement is not procedurally unconscionable when . . . Plaintiff had the opportunity to reject the arbitration agreement and failed to do so.").

Plaintiffs say their right to opt out was "illusory" because they allegedly "would have had to mail more than 200 separate first-class letters" to opt out each time they used Klarna. (Resp. at 9.) Plaintiffs' argument is flatly contradicted by the plain language of the opt-out provision itself, which provides that users need only opt out once, no matter how many times they use Klarna's product:

> IF YOU DO OPT OUT WITHIN 30 DAYS FROM THE DATE YOU FIRST USE THE KLARNA SERVICE OR OTHERWISE ACCEPT THE AGREEMENT, ALL OTHER AGREEMENTS YOU HAVE WITH KLARNA NOW OR IN THE FUTURE WILL NOT BE SUBJECT TO THIS ARBITRATION PROVISION.

(Ex. 9 at 29.) Plaintiffs have therefore failed to demonstrate procedural unconscionability.

## III. KLARNA'S ARBITRATION PROVISION IS NOT SUBSTANTIVELY UNCONSCIONABLE.

Plaintiffs also claim the arbitration agreement is substantively unconscionable for three reasons (separate from their concerns regarding the mass arbitration provisions). They attack the class action waiver and the fee-splitting provision as substantively unconscionable. They also argue that the arbitration agreement itself violates their Article III rights. None of these arguments is persuasive. First, Plaintiffs' unconscionability challenge to the class action waiver fails as a matter of law. Plaintiffs concede that the Supreme Court held the FAA preempts state laws regarding the unconscionability of class action waivers. (*See* Resp. at 13–14.) *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 352 (2011) ("[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."). The authorities Plaintiffs cite for their contention that a class waiver is unconscionable—*Eagle v. Fred Martin Motor Co.*, 809 N.E.2d 1161 (Ohio Ct. App. 2004) and *Schwartz v. Alltel Corp.*, 2006 WL 2243649 (Ohio Ct. App. 2006)—both predate *Concepcion*. Unable to overcome *Concepcion*'s holding, Plaintiffs resort to the conclusory assertion that FedArb's framework lacks arbitration's fundamental attributes of speed, informality, low stakes, and bilateral nature, as well as due process protections. (*See* Resp. at 13–14.) Plaintiffs offer no factual support for these contentions.

Second, the fee-splitting provisions are not unconscionable. Klarna's service terms provide that the "parties shall bear their own attorneys' fees and fees and costs in arbitration in accordance with the applicable arbitration rules . . . ." (Ex. 9 at 28.) FedArb's procedures

provide that the $2,000 filing fee and arbitrator's fee be split evenly between the parties.[5] Critically, however, FedArb's provisions expressly address circumstances in which state law limits a consumer's costs as follows:

> **Consumers.** For arbitrations arising out of pre-dispute arbitration clauses between companies and individual consumers, state law may limit the amount that consumers who initiate arbitration against the company will pay. In such situations, the company must bear the remainder of the consumers' share of the Filing Fee, Arbitrator's Fees, and all Case Management Fees.[6]

Even if a court were to find the fee-splitting arrangement impermissible, FedArb's rules expressly require Klarna to cover any remainder of the costs.

A party seeking "to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive" bears the burden of showing the likelihood of incurring such costs. *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 92 (2000). Bare assertions are insufficient; the plaintiff "must provide some individualized evidence to show that she is likely to face prohibitive costs in the arbitration and that she is financially incapable of meeting those costs." *Davis v. Fenton*, 26 F. Supp. 3d 727, 739 (N.D. Ill. 2014) (citing *Bess v. DirecTV, Inc.*, 885 N.E.2d 488, 498 (Ill. App. Ct. 2008)); *see also Campbell v. Marshall Int'l, LLC*, 623 F. Supp. 3d 927, 934 (N.D. Ill. 2022); *Holmer v. Alcove Ventures, LLC*, 2024 WL 4350906, at *5 (N.D. Ohio Sept. 30, 2024). Plaintiffs have not, and cannot, meet this burden in light of the relevant provisions.[7]

---

[5] *Arbitration Fees for Individual Arbitrations*, FedArb, https://fedarb.com/fedarb-rules/arbitration-fees-for-individual-arbitrations/ (last visited June 26, 2026).

[6] *Id.*

[7] Plaintiffs' ability to obtain attorneys' fees and costs if they prevail in arbitration weighs against finding the agreement unconscionable. *See DeGroff v. MascoTech Forming Techs.-Fort Wayne, Inc.*, 179 F. Supp. 2d 896, 910 (N.D. Ind. 2001) ("[G]iven the strong federal policy favoring enforcement of arbitration agreements, . . . the AAA's express allowance for attorney's fees, and [defendant's] representation that [plaintiff] may collect attorney's fees if she prevails, it is clear that the Agreement is not unenforceable simply because it initially requires [plaintiff] to pay her own fees." (internal citation omitted)).

Finally, Plaintiffs argue that compelling arbitration would violate their "right to Article III" adjudication because they did not "knowing[ly] and voluntar[il]y consent." (Resp. at 15.) Adopting the "knowing and voluntary" waiver standard Plaintiffs invoke would undermine decades of Supreme Court precedent enforcing arbitration clauses in consumer contracts, even where the individual did not read the agreement. *See Payne*, 2023 WL 8718118, at *4; *Stachurski*, 642 F. Supp. 2d at 765. Tellingly, Plaintiffs cite no case applying the knowing and voluntary standard to deny a motion to compel arbitration. Doing so now would contradict prior cases applying Illinois and Ohio law. *See Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 108 (Ill. 2006) ("[W]e view the heightened 'knowing and voluntary' standard as being inconsistent with the FAA."); *Adell v. Cellco P'ship*, 2022 WL 1487765, at *3 (6th Cir. May 11, 2022) (evaluating argument that plaintiff did not voluntarily waive her right to Article III adjudication under Ohio's unconscionability doctrine). But even under this standard, Plaintiffs did knowingly and voluntarily consent to arbitration. (*See* Mot. to Compel Arbitration Section I.A.) *See Jefferson v. Credit One Bank, N.A.*, 2021 WL 4894704, at *3 (N.D. Ill. Oct. 20, 2021) (finding "no reason to infer [plaintiff's] waiver was unknowing or involuntary simply due to the length of the agreement" where notice of arbitration provision was included at beginning of agreement and provision used bold font, underlining, and capital letters).

## IV. ANY SUPPOSEDLY UNCONSCIONABLE PROVISIONS COULD BE SEVERED AS NEEDED.

The presence of a severability clause in an arbitration agreement reflects the parties' intent that the agreement remain in force and strongly supports severance of any unenforceable provisions. *See Sanchez v. Alexandra Lozano Immigr. Law PLLC*, 2023 WL 4625780, at *8 (N.D. Ill. July 19, 2023); *Scovill v. WSYX/ABC*, 425 F.3d 1012, 1016 (6th Cir. 2005) ("[I]f a severability clause is included in an agreement, then such a clause expresses the parties['] 

intentions in favor of severance."). Severance also enables enforcement of the arbitration agreement's valid provisions, consistent with "the strong policy" favoring arbitration. *See Sanchez*, 2023 WL 4625780, at *8. Klarna's service terms include the following severance provision:

> If any part of this Arbitration Provision is found to be invalid or unenforceable, then that specific part shall be severed, and the rest of this Arbitration Provision will continue in full force and effect . . . .

(Ex. 9 at 29.)

Klarna's arbitration agreement incorporates FedArb's rules and procedures through a single provision. (*Id.* at 25 ("[T]he arbitration will be conducted by FedArb under its rules and procedures.").) If the Court were to find any of FedArb's procedures unconscionable, it should sever only that specific procedure while leaving the remaining FedArb procedures, and the arbitration agreement as a whole, in place. *See Feltner v. Bluegreen Corp.*, 2002 WL 31399106, at *2, *11 (S.D. Ind. Oct. 8, 2002) (severing only a single provision of defendant's Company Arbitration Rules identified as governing arbitration proceedings in the arbitration agreement).

Plaintiffs' assertion that FedArb is biased against consumers is wholly unsupported, and Plaintiffs cite no authority for the proposition that a court may disregard an arbitration agreement entirely based on speculation about potential administrator bias. Indeed, the sole case Plaintiffs cite for this point—*Scovill v. WSYX/ABC*—does not address potential bias and instead affirms severance of unenforceable provisions and enforcement of the remainder of the arbitration agreement. 425 F.3d 1012, 1017 (6th Cir. 2005). Accordingly, even if the Court finds any provision unconscionable, it should sever that provision and compel individual arbitration consistent with the parties' express agreement to arbitrate their disputes.

## CONCLUSION

For the foregoing reasons and the reasons set forth in its opening brief, Klarna

respectfully requests that this Court grant its motion to compel arbitration on an individual basis and stay all proceedings in this action pending the completion of arbitration.

Dated: June 29, 2026

Respectfully submitted,

By: */s/ Danielle N. Morris*

Elizabeth L. McKeen (CA Bar No. 216690)
Danielle N. Morris (CA Bar No. 246295)
O'MELVENY & MYERS LLP
610 Newport Center Drive
17th Floor
Newport Beach, California 92660-6429
Telephone: +1 949 823 6900
Facsimile: +1 949 823 6994
emckeen@omm.com
dmorris@omm.com

*Attorneys for Defendant Klarna Inc.*